May I please report? Good morning. I'd like to thank the University of Denver for having us here. My name is Bill Lund and I represent the appellant, Alfred Busch, who's been charged among several different charges, but the most important is carjacking with intent to kill or commit serious bodily harm. The first element of a federal carjacking case is that you have a car or that you have under the statute a motor vehicle. The carjacking statute came about in the anti-car theft act of 1992 where all references in the legislative history about the type of motor vehicle that they were covering was car. We've got plenty of precedent saying that the mere title of a statute or the heading of it doesn't control and here the text talks about a motor vehicle, not a car. So even though the title would support your argument as you're making it, I think we really are forced to go into the text. Don't you agree as a matter of our normal statutory interpretation? I don't disagree with that at all. Are you categorically saying that a motorcycle is not a motor vehicle? Well, I'm saying a dirt bike, particularly this dirt bike, is not a motor vehicle, which is defined in the Motor Vehicle Act of 1984. The 1992 Carjacking Act, according to the legislative history, is an amendment to the Motor Vehicle Act of 1984. Counsel, where did you make that argument to the district court? It was not made. This is a plain error argument. So you're on plain error. Yes, it is not made. It was forfeited. So the Motor Vehicle Act of 1984 defines a motor vehicle as a vehicle driven or drawn by mechanical powers and manufactured primarily for use on public streets, roads, and highways. So during the trial, there's very little question that this dirt bike was not a vehicle that met that definition. In fact... But that's not the definition that's included in 2119. There is no definition. There is no definition. Yes, but because it's an amendment... Nor does the statute refer to the definition that you just supplied. But it is a... That's correct. But the definition is, as I said, this is an amendment to the Motor Vehicle Act of 1984. And that is the only place where, to my knowledge, it's been pointed out in this case, in the criminal statutes, the federal criminal statutes, where there is a definition of motor vehicle. And that definition... And that's in 18 U.S.C. 511C. And that definition has been around for more than 60 years, as the judge in the In Re Race case points out. But in this case, the government's own witness testifies that... And he's the owner of Las Cruces Motorsports, that this... And he's got the dirt bike right there in the courtroom. And he says that this is not street legal. It doesn't have any front... It doesn't have front lights. It doesn't have headlights. It doesn't have rear lights. It doesn't have rear reflectors. It doesn't have turn signals. But the statute doesn't say a street legal vehicle. No, it doesn't say that. But it does say that it's primarily manufactured for use on public streets, roads, or highways. And he's asked, all these components are missing on this type of bike. And he answers, and they say, and that's from birth, is that correct? He answers, correct. It's not like someone took them off from birth. That bike never had lights. So this is... You could have two motorcycles going down a road. One's a Kawasaki, whatever, designed for street use. And the other's a dirt bike. And the dirt bike's being operated, I guess, pretty illegally on a public street. The statute would apply to the carjacking of the Kawasaki motorcycle, but would not apply to the dirt bike. And this is outside the record and anecdotally, but on Saturday, I was on a public highway, and there was a dirt bike ahead of me doing wheelies. And I thought, well, how did he know I had this case on Tuesday? But you can see where the same design, a motorcycle, one would be carjacking and one would be not. Is that right? Is that your argument? My argument is that this vehicle does not qualify as a motor vehicle under the statutory definition that's in the criminal federal statutes. And therefore, what the district court had to do was expand the statute to make it possible to try this defendant. So counsel, you're on plain error to satisfy plainness, right? Your argument is that we have to import the definition from section 511, the vehicle primarily for use on public roads. We have to import that definition into the 2119 context. Is that your argument? Yes, and that's what the Energy Committee said in the legislative history with regard to this act. How does that satisfy plainness? How does that satisfy the plainness problem? Because the motor vehicle definition is contained in the federal criminal statutes. It's there just as plain as day. And there's other things about this, of course, that are pointed out in Ray Ray's case. The common definition, which you find in Webster's dictionary, not Black's Law dictionary that nobody uses other than maybe a few lawyers, defines a motor vehicle as something that's for use on highways. The legislative history, there's absolutely no reference to dirt bikes or airplanes or motor boats or anything of that nature. It primarily deals with cars and other vehicles that are primarily manufactured for use on highways. There are at least four federal statutes that go back to 1966. The government has not pointed out any single statute that would be so expansive as to allow this vehicle to be on a road. What if an owner added taillights and turn signals to a dirt bike and made it street legal? I think it wouldn't be because it has to be primarily manufactured for that purpose. So the answer is that would not work. It's not primarily manufactured for that purpose. If somebody came and cut the cord to the lights on the car or took the headlights out, would that now make that car not a car under the carjacking statute? Same answer. It's manufactured primarily for use on the road. So you don't look to what the object is at the moment of the infraction. You look back to how it was made, maybe years earlier. That's kind of an odd guess too, isn't it? Not really. Why wouldn't you care more about what it was like at the moment of the infraction, whether it was legal or not on the highway, if that's your argument, rather than saying, was it legal or not five years ago when it was made? Who cares? That's the way the federal criminal definition of a motor vehicle is set out in the statute. If it's primarily manufactured for use on the highways, roads, or public streets, then it qualifies. But as Mr. Gutierrez testified, this doesn't fit that definition. It never was manufactured for the public streets, roads, or highways. And so the district court had to expand the statute to make it possible to try this definition. And that's the reason. Applying a textualist approach here, there are several of these related statutes that specifically import the 511 definition. Section 2119 did not. Why shouldn't we take from that lack of any textual clues that Congress wanted the narrower definition and apply a more broad definition, because a motor vehicle can be construed to encompass vehicles such as the dirt bike you've shown on the posters? Well, you don't. I've cited the Dubin case. In criminal statutes, you don't expand them to try and make it fit. We're not trying to expand it. We're just trying to construe what Congress intended. And this was pointed out by the court that did the race case. You interpret these statutes more narrowly, particularly when you're dealing with a defendant. I'd like to move on. I do think that this is, incidentally, plain error, because by expanding a statute to make this, clearly my client was sentenced to prison for 40 years. His substantial rights were affected. And the fact that a statute has been expanded to make it fit into his case, as it did here, is an example of a situation where the integrity of the judicial system is affected. Are you aware of any other case where a dirt bike off-road vehicle was used, was prosecuted as a carjacking? There's one, but it didn't deal with this issue either. They didn't raise the issue. There is a case called United States v. Sanders, but it's an unpublished opinion, 683 Federal Appendix 122, that this issue was not raised. They didn't raise it. Mr. Bush's co-defendant raised this issue, so not plain error. And that request was denied in the district court. Is that case on appeal? I'm not aware of that. I don't have that. I want to go to the jury instruction issue, which has to do with the addition of the paragraph. This is the entire jury instruction, 52 and 53 of the opening brief. And this is where they add language at the very end that says that in this case, carjacking with intent to kill or cause serious bodily harm, it's not necessary to prove the element of intent to kill or cause serious bodily harm. Counsel, what's your standard of review on this? It's abuse of discretion. How is it preserved? I was a little bit unclear about your argument. Yes, on page 1527, my client's attorney at the trial says, I think it would add a lot of confusion to the jury. And then when the government argues that they still want to include this paragraph that they've added to the pattern jury instruction, he says, I'd rather we not, Your Honor. Let's leave it out. And he even repeats that a second time. I'd rather we not. Let's leave it out. So I thought the government asked to separate the death results element into another instruction. No, the government wanted to try to include a separate page, but they still wanted to include the page with the doctored last paragraph in it. So that's a different issue. We argued that the last paragraph shouldn't be there at all. So I'm confused. I thought that the defendant was OK with that language. I thought that at some point they said, I'm OK. So that's just not what happened. I don't think so. I think that he did preserve it. And it allowed the government, obviously, to get on the, in its closing arguments, to argue that you don't be confused, that you have to find five elements. You don't have to find that he had the intent to kill or cause serious bodily harm. And that, of course, completely tipped this case. There is serious doubt as to whether or not the judgment can be trusted. I want to deal with the self-defense for the same reason. Self-defense instruction is something that should have been granted. If you reasonably believe that there is danger of death or serious bodily harm, in this case, they have a man who has escalated this gathering in front of his house where he's pointing a gun at them. And they, in response to that, it takes them about five to ten seconds to do that. But they then, at least two of them, have guns. We're not quite certain of what my client has. But that's a situation that they should have been able to get a self-defense instruction. Can you have a self-defense when you're the aggressor in the conflict? Well, the issue is whether he was the aggressor or not. That's not my question. That's a factual question. We'll deal with that from the record. My question is a legal one. Can you assert self-defense when you're the aggressor in the encounter? No. I don't think you can. I'll reserve my time. May I ask one more question? Sure. I think I'm a broken record today on preservation, but I did have a question for you on the self-defense instruction. Did your client separately object, or are you relying on Mr. Barnes or co-defendants' litigation of the self-defense instruction? Clearly, Mr. Barnes, the attorney, spent the most time on it. My recollection is that he actually did chime in and say that he agreed, but I don't recall that for certain. Okay. Thank you. Ms. Millen, I'll give you 30 seconds to rebuttal. All right. Let's hear U.S. Attorney, Mr. Kaney.  My name is Emil Kaney, and I'm here for the United States. Addressing the statutory construction issue that Mr. Dunn raised at first, I would say the statutory definition he's relying on comes from Title 49, Section 32-101. If you look at Title, that definition, it specifically applies to Part C, Title 49. That contains a lot of provisions, including provisions about the labeling of vehicles, safety equipment that's to be included on certain vehicles, gathering of information about certain vehicles, and so forth. It's the kind of requirement that Congress might have thought should be included or applied to vehicles that are designed to run on public highways. Congress nowhere applies that definition to Section 21-19. So is your understanding that the defendant is arguing that if somebody had come and taken your license plates off the car that you wouldn't be liable if you carjacked that car because it was not legal on the highway? I mean, I would like to argue that because it's a weaker argument. I don't think that's an argument he's making because the statute he's relying on says vehicles that are designed to run on public highways. So I don't want to make a caricature of his argument. But I don't think that argument doesn't apply. I think that statute doesn't apply to Section 21-19, and it makes sense that it doesn't do so because the requirements that Congress has in mind in Title 49, it may have had reasons for applying those requirements to certain motor vehicles and not others. But with respect to Section 21-19, what Congress is trying to do is deter a certain form of violent crime. And that doesn't depend on the sort of motor vehicle that is being taken during that crime. So it makes sense that Congress would apply a broader plain meaning definition to that. One of the things that Mr. Dunn has said is that, well, look, Congress did intend to apply that definition to 21-19 because the Anti-Car Theft Act of 1992 amended the 1984 Act where that definition is included. But it's true that the 1992 Act did amend the 1984 Act. It amended certain provisions of the Act. So if you look at Chapter 331 of Title 49, that's what's being discussed there. And it has to deal with the marking of auto parts to allow their tracing in case they're stolen. But this wasn't the only thing that the Anti-Car Theft Act did. It created 21-19 out of whole cloth. So that's not an amendment to Section 21, I mean to the 1984 Act. It also increases the statutory penalties in Section 18 USC 2312 and 2313. And those have to do with receipt of stolen motor vehicles. Those are subject to the definition of motor vehicle that's in Section 2311 of Title 18, which includes motorcycles and any sort of self-propelled vehicle. So it's not- Would you be making the same argument this morning if the motor vehicle in question here was a scooter like we see on the downtown streets all the time? I think so, as long as it's self-propelled. So that'd include a riding lawnmower that could be carjacked? That could be. Golf cart? Yes. As long as it's self-propelled and it has wheels and it's designed to run on land. That's what- You know, that kind of takes me kind of full circle to would a reasonable citizen understand that this statute prohibited taking a lawnmower or a golf cart violently? You know, really almost a rule of lenity argument? What's fair notice to the defendant out there that the statute encompasses that type of behavior? Well, I think they are all wheeled vehicles that are self-propelled. Those are not the typical vehicles that are subject to carjacking. That's true. I think the definition does apply to them. But even if you have some vehicle to where you could say, well, it's a little bit less clear whether that definition should apply to them. What we have here is a motorcycle. Is this the only or first case where the government's prosecuted under the carjacking statute a non-street legal vehicle, whether it's a normal car, truck, or motorcycle? No, Your Honor. The case that Mr. Lundreth mentioned- Sanders? From the Third Circuit. We did, although- What was the vehicle there? It was a dirt bike. But it didn't- the issue- the defendant there didn't raise the issue and say, well, the dirt bike isn't a motor vehicle within the meaning of 2119. I would also point out that this issue, this claim, is waived. Not only did the defendant not raise it below, he's acknowledged that he's on plain air review, but he did not acknowledge that in his opening brief, even though there's nowhere in the directed verdict motion that this was reserved. Now, I understand this court has discretion to reach a plain air argument anyway. But here, well, if you look at what this court did in Leffler, in Leffler the court said, look, we're not going to reach it, even a plain air argument raised in the reply, because, one, it was clear that there was no preservation. This isn't a case where there's some ambiguity about it and where the benefit of the doubt would go to the defendant. And, second, this is a case where we raise that issue in our answer brief. I would point out that the way- or the second thing that Leffler looked at, rather, was whether it appears to be some kind of mistake that plain air wasn't raised. If you look at the opening brief here, the opening brief cites the directed verdict argument, but it includes quoted language in support of the notion that this argument was raised that is not in the transcript anywhere. So I don't think there's a mistake here, and I don't think there's any doubt that it should have been preserved. But going on to, I think, the second issue the defendant raised was the jury instruction issue. That issue, we think, is- Yes, ma'am. So how do you respond to Mr. Bush's argument that the government essentially fed language to Mr. Bush and Ms. Hedgecock when it came to words like jack, punk, f him up, things like that, that you attribute now to the defendant in support of satisfying conditional intent? Is that something we should be concerned about? No, Your Honor. If you look at Mr. Bush's statement, and I think it begins in Volume 1 around page 148, somewhere around there, it is true that the sheriff's deputy asks him whether he used that language. But Mr. Bush says yes in response to both of those questions. I think that's at page 148 and 155. There's two specific things that he's talking about where he says that this is actually the sheriff's deputy's words, and it's true, the sheriff's deputy did ask him those questions, but Mr. Bush indicated he agreed with the sheriff's deputy, and I think we can fairly attribute those words to him. And I'm sorry, you asked about Ms. Hedgecock as well? Yeah. The plea agreement, what she testified is yes, the government drafted the plea agreement and gave it to her, and she was cross-examined about that. I mean, we draft all of our plea agreements. And so she was cross-examined very vigorously about her credibility, and it was up to the jury to decide whether to believe her testimony or not. On the jury instruction issue, I think one of the panel members, I forget who, mentioned that it was the government who asked for the instruction that Mr. Bush now says should have been given. And you can find that instruction in Volume 1, page 569 and 70. We ask that the jury be instructed on the four basic elements of carjacking, which are found in the prefatory paragraph of the statute, and then another page asking that the jury should be instructed that if you find those four elements, then you have to decide whether there's carjacking resulted in death. Defendants all opposed that instruction. I think they've waived any claim. They opposed that. But I thought that did the defendant agree with the instruction as given, or did the defendant oppose that language in the instruction as given, quite apart from their response to the government's tender? Correct. Yeah, that's the other sub-part of the claim. On the one hand, he's arguing, look, there should have been two separate instructions. They should have been separated out. And the second thing he's arguing is the but-for language just shouldn't have been given at all. They never made that argument. I'm not saying they affirmatively agreed or liked that language, but they never made that argument. The whole discussion was about whether the conditional intent paragraph, there's a paragraph right before the paragraph on the but-for language, which explains the conditional intent argument. And they had a problem with that language. So when he was up here saying we objected, the objection was not on the grounds of that disputed last sentence? Well, it's two sentences. It's the final paragraph of the instruction. And you're saying when we look at the transcript, we will agree with you that although he objected to that instruction, it was not directed to those last two sentences? That's correct. But even if he had, the but-for language comes right. The but-for language is based on this court's decision in Boal, which said that that death results element is a but-for, does require a but-for causation. So if he had preserved that objection, then I think we went on the merits, too. So the third. The denial of the self-defense instruction. Denial of the self-defense instruction. What we're arguing is that basically two things. One, that because this is a but-for causation, that self-defense is not a defense to a but-for causation element. And because but-for causation, as this court has said in Lowell and Moya, Congress is not concerned about why something happens. It's concerned about whether something happened. And it serves the deterrent purpose of the statute to show that if you go and commit a carjacking, then you're responsible for what the result is, no matter how it came about, even if you didn't mean it, even if someone else pulled a gun. And someone else pulling a gun, the victim pulling a gun, is one of the dangers of a robbery. The victim is going to try to interfere or defend his or her property. Counsel, this issue is on appeal in Barnes. Is that correct? That's correct. And so are we to understand for purposes of this appeal? I mean, I always sort of understood that when we were looking at jury instructions, you were looking at them in an individualized way in the case. Right. And here, I don't see anything in the record that shows the litigation of this instruction by the defendant in this case. So are Mr. Barnes and Mr. Bush similarly situated? We shouldn't worry about that? I mean, the government doesn't point that out. I just wanted to make sure I understood why. I think this issue came up several times before trial, and during one of those discussions, Mr. Bush said that he agreed with Mr. Barnes. He didn't say that again at trial. And I did think about that issue, but I thought probably that you all would give him the benefit of the doubt. So I didn't raise a waiver argument on that point, ma'am. But it is being litigated in Barnes, this court. Another panel heard argument on it in January. The other thing I would say, there is a new argument that Mr. Bush raises in his reply brief on self-defense. He says the way it was litigated below was that, and Mr. Barnes was the primary party who litigated this, was it was being asserted as a defense to the death results element. And Mr. Barnes' argument was, look, even if you find I'm guilty of carjacking and conspiracy, I still satisfy the requirements for the self-defense as to the death results element. In his reply brief, Mr. Bush is now arguing, well, that claim also goes to the conditional intent element of the government's carjacking charge. And I just wanted to point out that that was never raised at all in the district court. The way the defendants argued that element was they said, we just didn't have that intent. And Mr. Barnes argued, I thought the vehicle belonged to Bush, and Mr. Bush argued, well, I just didn't, I just wanted to take the bike. Yeah, I might have been angry with Mr. Swenson, but I didn't intend for any harm to come to him. So this instruction was never asserted as to the third element, as to the conditional intent element, only as to the last one. And I see that I have six seconds left, unless the court has any other questions. We ask that you affirm the judgment. Thank you, counsel. We appreciate the argument. Robert, could you give 30 seconds for a rebuttal? Thank you. Mr. Lynn, if you want 30 seconds. Yes. The judge, I think probably at page 1525, stated that actually read the last line of that jury instruction that we're disputing. And within two pages of the transcript, you'll find that the attorney is saying that it should be left out, and that it shouldn't be allowed. So that's what we were talking about. Did he use the word objection? Did he object, or did he just make it as a suggestion? Let's leave it out twice, is what he said. I think that's pretty strong terms. Okay. Thank you. All right, counsel, your time's expired, and counsel are excused. We appreciate the argument. The case will be submitted.